(132 So. 163)
### CIRLOT et al. v. STEVENS.
### I Div. 621.

Supreme Court of Alabama.
Jan. 22, 1931.

Harry T. Smith & Caffey and Smith & Johnston, all of Mobile, for appellants.

Harry Seale, of Mobile, for appellee.

BOULDIN, J.

The bill, filed by a lessee in possession, is to remove a cloud upon his leasehold estate.

The essential inquiry on this appeal is whether, under the averments of the bill, the instrument is a cloud on the lessee's title, or is a valid and binding part of the lease defining the rights and obligations of the lessor and lessee.

The case made by the bill is this:

Felix Cirlot, respondent, executed to Ethel M. King a lease on business property in Mobile for a period of ten years, beginning August 1, 1924.

The consideration for the lease was $3,000, payable in annual installments of $500 for the first two years, and $1,000 for the next two years, and a rental of $250 per month for the first five years, and thereafter a rental of $300 per month. All these sums were evidenced by series of notes. At the end of the ten-year lease the lessee was given the option to purchase for the sum of $18,041.

The lease stipulated that should the lessee "fail to pay at maturity any one of the lessee's several promissory notes, with interest, then, and in either of said events, the owner shall have the right to at once enter upon and take possession of said property and treat all payments made upon said promissory notes for Five Hundred Dollars ($500.00) each and for One Thousand Dollars ($1,000.-00) each, or any of them, and the unpaid portions of said notes, as the consideration for which the owner entered into this contract, and all payments made upon any of said notes and the unpaid portions of any other notes maturing prior to such entry and possession as rent for the use of said property down to the time that the owner so takes possession, and in that event the owner shall return to the lessee all of the rent notes that have not become due, and in such event this contract shall, at the election of the owner, but not otherwise, cease and determine, and the owner shall be entirely freed and discharged from any and all other obligations under this contract."

On March 8, 1929, the lessor and lessee entered into a further contract in writing, reciting:

"That, whereas, Ethel M. King made default in the payment of three promissory notes for the sum of Two Hundred Fifty Dollars ($250.00) each, one of which was due on

the first day of December, 1928, another on the first day of January, 1929, another on the first day of February, 1929, all mentioned in a certain contract of lease and sale dated July 1, 1929, made between the said Ethel M. King and Felix Cirlot; and,

"Whereas, the said Felix Cirlot, on the twenty-sixth day of February, 1929, elected to terminate said contract as of the first day of March, 1929, on account of said default; and,

"Whereas, Ethel M. King on March 6, 1929, paid several promissory notes in full, together with all taxes due on No. 265 Dauphin Street for the year 1928, and also an additional indebtedness to the said Felix Cirlot of Two Hundred Dollars ($200.00), evidenced by the past due promissory note of Ethel M. King, with interest thereon; and,

"Whereas, there is a controversy between the said Felix Cirlot and Ethel M. King as to the effect of such payment upon said contract, in which controversy the said Felix Cirlot claims that said payments discharged the existing indebtedness evidenced by the notes paid, but did not restore all of the rights of Ethel M. King under said contract of lease and sale; and Ethel M. King claims that said payments operated to restore said contract to the status that would have existed had not defaults been made in the performance of any of its terms.

"Now, therefore, by way of compromise and settlement of said controversy, it is agreed that the said Ethel M. King shall and will pay to the said Felix Cirlot the sum of Two Hundred Fifteen and 96/100 Dollars ($215.96), to cover damages incurred by Felix Cirlot other than that covered by said contract of lease and sale, and will also pay him Three Thousand Seven Hundred and Fifty Dollars ($3,750.00), according to the tenor and effect of four promissory notes of the said Ethel M. King, of even date herewith, the first three maturing notes being for the sum of One Thousand Dollars ($1,000.00) each and the last maturing note being for the sum of Seven Hundred and Fifty Dollars ($750.00), said notes being payable, without interest, respectively in two, three, four and five years from this date; and, in consideration of such payments, said Felix Cirlot hereby sets aside and annuls such defaults and restores said contracts to the status it would have occupied had no defaults occurred."

This supplemental contract stipulated for forfeiture and re-entry upon the same defaults as in the original lease, and for non-payment of any of the new notes; but further stipulated that before any re-entry or right to claim a forfeiture should be exercised by the lessor he should give ten days' notice in writing by registered mail, and the lessee should have ten days within which to meet payments then in default.

Subsequent to the making of this supplemental agreement and on November 18, 1929, the lessee, by instrument in writing, assigned the original lease to Mobile National Bank on a recited cash consideration of $3,810.

Thereafter on December 3, 1929, the lessee joined the Bank of Mobile in making an assignment of the original lease to this complainant, Hardy N. Stevens, upon a recited cash consideration of $1 to the lessee and $1,000 to the Bank.

The bill seeks to cancel the supplemental contract of March 8, 1929, as a cloud on complainant's leasehold estate as assignee of the original lease.

The bill avers complainant had no notice, actual or constructive, of the existence of such supplemental agreement when he acquired the original lease with all the rights stipulated therein.

The grounds relied upon for relief are want of consideration for the supplemental agreement modifying the original lease, the protection of complainant as a bona fide purchaser without notice, and estoppel.

Want of consideration seems to be rested upon the notion that the payment of the three months' rent in default at the time of notice given of the lessor's election to terminate the lease operated ipso facto to remove the forfeiture and reinstate the lease according to its original terms; and therefore the promise to pay a further sum as per the supplemental agreement was without consideration and void.

This notion fails to take into account the essential difference between the relations of vendor and vendee and those of lessor and lessee. In the former, acceptance of payment of installments of purchase money, as such, implies that the contract of purchase is still in force. The vendee has an equity increasing in value as successive installments are paid.

Courts of equity disfavor forfeitures, in such cases, and to avoid oppression often hold the parties to the relation of mortgagor and mortgagee in equity.

But there is no good reason why the lessor and lessee may not freely stipulate for a termination of the lease upon non-payment of rents.

When so terminated, rents already accrued for past use of the property remain an existing indebtedness, unless otherwise stipulated. 35 C. J. p. 1082.

In the original lease here involved, it was clearly contemplated the notes for rents in arrears should be retained and collected on termination of the lease for such default.

The recital of facts in the supplemental agreement, not questioned by the bill, discloses no such transaction as would keep the original lease in force.

By the supplemental contract it is agreed between the parties that there was a controversy in this regard, and the consideration for the modified agreement was by way of compromise and settlement of such controversy. No facts are averred negativing the bona fides of the lessor in such controversy, nor disclosing a want of reasonable grounds for controversy on his part. So far as appears, the modified agreement was made advisedly for the purpose of reinstating the original lease as thus modified.

A valuable consideration is not shown to be wanting.

The status of a bona fide purchaser for complainant is rested upon the notion that the supplemental agreement was subject to our recording acts; that it was the duty of the lessor to put it to record, and failing so to do complainant, without notice, actual or constructive, of its existence, is entitled to the protection of a bona fide purchaser of the leasehold estate evidenced by the original lease.

[6, 7] Recording acts are for the protection of bona fide purchasers and the like from the vendor, mortgagor, or lessor against the vendee, mortgagee, or lessee holding dormant conveyances, contracts to convey, mortgages, or leases. They put the burden on the vendee, mortgagee, or lessee, or their assigns, to give constructive notice by placing their instruments on record. Winters v. Powell, 180 Ala. 433, 61 So. 96. No such duty rests upon the vendor, mortgagor, or lessor. As to him, one dealing with a lessee is chargeable with notice of the terms of the lease, and chargeable with notice of the existing status of the leasehold estate. Dixie Grain Co. v. Quinn, 181 Ala. 208, 61 So. 886; Veitch v. Woodward Iron Co., 200 Ala. 359, 76 So. 124. We think the lessor was under no duty to put the original lease nor the modified lease upon record.

The estoppel sought to be set up is in effect that the lessor put the lessee in position to defraud an assignee of the original lease.

Being under no duty, as we have held, to record the supplemental lease, the estoppel can rest on no other ground than that the existing lease was evidenced by two separate instruments, the older making no reference to the later.

The law, as of course, makes no requirement that the status of a transaction must be shown by one document only; nor that each must make reference to the other, save in certain events involving commercial paper.

The lessor was not required to anticipate that his lessee would make assignment of one instrument, a part of the existing contract of lease, not disclosing the other.

The rights of complainant against the assignors, in case there was such concealment, or his equities under the terms and covenants of the assignment, are not here presented.

It follows the demurrers to the bill should have been sustained.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.